

2016 MAR -7 A 10: 3

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DANA IMORI and DANIEL IMORI, husband and wife, | ) ) ) | DIVISION ONE |
| Appellants, | ) ) | NO. 73417-2-I |
| v. | ) ) | UNPUBLISHED OPINION |
| MARINATION LLC, a Washington Limited Liability Company, | ) ) ) ) | |
| Respondent. | ) ) | FILED: March 7, 2016 |

DWYER, J. — Dana Imori (Imori) and her husband Daniel Imori appeal from the summary judgment dismissal of their negligence claim against Marination LLC. Finding no error, we affirm.

I

This case arises out of a slip and fall that occurred at the Marination Ma Kai restaurant around lunchtime on November 29, 2013. After a customer reported spilling a beverage in front of the bathroom area, Alex Smith, a dishwasher at the restaurant, was asked to clean up the spill. Smith poured water into a mop bucket and added a biodegradable mop solution. He took the bucket, a mop, and a collapsible, bright yellow "wet

floor" sign and went to clean up the spill, which he observed to be a puddle of clear liquid about eight inches in diameter.[1] Smith mopped the floor with the solution in the bucket for approximately one minute, wringing out the mop in the bucket at least twice. He stated that, after mopping, the floor remained "a bit damp" but there were no puddles of liquid remaining. Smith did not rinse or dry the floor. He testified that the mop solution is designed to dry quickly and that, in his experience, a floor mopped with the solution would be dry in less than 10 minutes. Smith then placed the wet floor sign immediately next to the mopped area so that it did not block the pathway to the bathroom.

Shortly thereafter, Imori entered the restaurant to buy lunch. After placing her order, Imori walked toward the bathroom, at which point she slipped on what she described as "water" or "liquid." She fell, fracturing her knee. Imori stated that there was enough water on the floor such that it soaked into her pants as she lay on the floor. She alleged she did not see any water or the wet floor sign until after she fell.

Approximately 10 minutes after mopping the spill, Smith learned that Imori had slipped and fallen. Smith mopped the area a second time, dried

---

[1] In a statement made shortly after Imori's fall, Smith described the spill he was asked to clean as "greasy." In a later statement as well as in his deposition, Smith denied the spill was greasy and testified that it was a "clear liquid." Imori never testified that the spill was greasy, only that it was water or liquid. Imori now argues that she is entitled to an inference that the spilled substance was greasy. Imori's claim is of no consequence because the only evidence in the record, even viewed in the light most favorable to Imori, was that the floor was wet, not greasy, at the time she slipped.

the area with hand towels, and placed two additional wet floor signs around the area in a triangular formation.

Imori filed a complaint for damages against Marination. Marination moved for summary judgment, contending Imori had failed to set forth facts demonstrating that (1) the wet floor created an unreasonable risk of harm, (2) Marination should have anticipated Imori would fail to protect herself from the danger of slipping, and (3) Marination failed to exercise reasonable care in cleaning the spill.

In response, Imori submitted two photographs she took with her cell phone while waiting for the ambulance to arrive. While it is difficult to glean much useful information from these photographs given the poor reproduction quality, there appears to be a shiny spot in both photographs consistent with Imori's claim that there was water on the floor. One of the photographs corroborates Smith's testimony regarding the placement of the wet floor sign.

Imori also submitted the declaration of William Christenson, a case manager with Construction Dispute Resolution. According to Christenson's curriculum vitae, his background and expertise is in "construction management, building and civil construction, building envelope investigations, and building envelope design." Christenson reviewed Imori's photographs and visited the restaurant to observe the concrete floor outside the bathroom. Christenson claimed that "[t]he area where the fall

occurred varied from slightly gritty to smooth" and this variability "when combined with the wet floor creates an uncertain surface for a person walking to safely navigate." Christenson also claimed that Smith failed to use the manufacturer's instructions for the mop solution, which he asserted required the user to rinse the floor after mopping and then dry the floor using a dry mop or squeegee. Christenson opined that failing to follow the instructions "increased the potential for a person to slip and fall." Finally, Christenson claimed that the industry standard is to set multiple warning barricades at the outer perimeter of a hazard area and that Smith failed to use enough wet floor signs or orient them correctly after mopping for the first time.

The trial court granted summary judgment in favor of Marination and denied Imori's motion for reconsideration.[2] Imori appeals.

II

We review a summary judgment order de novo, engaging in the same inquiry as the superior court. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Lybbert, 141 Wn.2d at 34. A defendant can move for summary judgment by showing that there is an absence of evidence to support the plaintiff's

---

[2] Because Imori did not assign error to or otherwise challenge the trial court's denial of her motion for reconsideration, we do not address it. See RAP 10.3(a)(4), (6).

4

case. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989). The burden then shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact for trial. Young, 112 Wn.2d at 225. Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of fact. CR 56(e); Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989). Nor may the nonmoving party rely on speculation or argumentative assertions that unresolved factual issues remain. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986). If the plaintiff "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

III

To establish negligence, a plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996). For negligence claims based on premises liability, Washington has adopted the standards set forth in the Restatement (Second) of Torts §§

343 and 343A to determine a landowner's duty to invitees.[3] Iwai v. State, 129 Wn.2d 84, 93, 915 P.2d 1089 (1996). A landowner is liable for an invitee's physical harm caused by a condition on the land only if the landowner:

> "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger."

Iwai, 129 Wn.2d. at 94-95 (quoting RESTATEMENT (SECOND) OF TORTS § 343 (1965)). Applying this test, we conclude that Imori fails to establish a genuine issue of material fact that Marination breached any duty of care.

First, there is no evidence in the record that the wet floor presented an unreasonable risk of harm. Imori testified that she slipped on a wet floor and fell. Christenson testified that the floor's uneven texture created "an uncertain surface for a person walking to safely navigate" when the floor was wet. Taking all reasonable inferences in Imori's favor, this constitutes evidence that the pathway to the bathroom was wet and the wetness made the floor slippery. But there is no evidence that the floor was *unreasonably* slippery. The fact that Imori slipped and fell does not, by itself, mean that there is an unreasonably dangerous condition. See Knopp v. Kemp & Hebert, 193 Wash. 160, 164-65, 74 P.2d 924 (1938) ("It is common

---

[3] Imori's status as an invitee is undisputed.

knowledge that people fall on the best of sidewalks and floors. A fall, therefore, does not, of itself, tend to prove that the surface over which one is walking is dangerously unfit for the purpose."). Nor is the mere presence of water on a floor where someone slips enough, in and of itself, to prove a breach of duty by the landowner. See Shumaker v. Charada Inv. Co., 183 Wash. 521, 530-31, 49 P.2d 44 (1935) ("A wet cement surface does not create a condition dangerous to pedestrians. It is a most common condition, and one readily noticed by the most casual glance.").

Second, Imori fails to establish that she could not reasonably have been expected to protect herself from the wet floor. After Smith mopped the spill, he placed a bright yellow sign reading "Caution: Wet Floor" immediately next to the mopped area. Imori argues that the lettering on the sign was "facing the wall instead of facing approaching foot traffic." But this does not create a genuine issue of material fact given the small size of the mopped area, the proximity of the sign, and the fact that a bright yellow sign typically signifies a warning of some kind.

Finally, even if the wet area was hazardous, there is no evidence that Marination failed to exercise reasonable care in alleviating the hazard. The duty of reasonable care requires a landowner to inspect for dangerous conditions, "'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.'" Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d

121, 139, 875 P.2d 621 (1994) (alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. b). The evidence shows that as soon as the restaurant was notified of the spill, Smith completely mopped the spill using a quick-drying biodegradable cleaner and placed a bright yellow wet floor sign near the mopped area. Christenson claims that Smith was negligent for failing to follow the manufacturer's instructions for the cleaner or the industry standard for the use of wet floor signs. But Christenson did not provide a copy of the manufacturer's instructions nor any evidence that the industry standard requires multiple warning signs.[4] The facts required by CR 56(e) to defeat a summary judgment motion are evidentiary in nature, and conclusory statements are insufficient. Christenson's declaration fails to establish the existence of genuine issues of fact for trial.

Affirmed.

We concur:

---

[4] The record shows that Imori later submitted a copy of the manufacturer's instructions with her motion for reconsideration. Under RAP 9.12, our review of an order granting summary judgment is limited to the "evidence and issues called to the attention of the trial court." We do not consider the instructions on appeal because this evidence was not before the trial court at the time of the summary judgment hearing and Imori does not challenge the order denying reconsideration.